**DAVID J. HOLDSWORTH** (4052)

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT  84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | | |
|---|---|---|
| IKE R. ANDERSON, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ZIONS BANCORPORATION | : | |
| NATIONAL ASSOCIATION, | : | Civil No. |
| | : | |
| Defendant. | : | Hon. |

COMES NOW the Plaintiff, Ike R. Anderson, complains of Defendant

Zions Bancorporation National Association (hereinafter "Zions" or "Defendant")

demands trial by jury and as and for causes of action alleges as follows:

**JURISDICTION**

1.      Plaintiff, by and through his counsel, David J.  Holdsworth, files

this Complaint against the Defendant alleging violations of Americans with

Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as

amended, which provide that it is unlawful to discriminate against an employee in his

employment on the basis of his disability and to retaliate against an employee for engaging in protected activity.

2.      This action is brought pursuant to the ADA and Title VII of the Civil Rights Act of 1964, as amended, for discrimination in employment and for retaliation.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000 e (5).  Equitable and other relief are also sought under 42 U.S.C. § 2000 e (5) (g).Where employment discrimination based upon disability is alleged, jurisdiction is conferred by the Americans with Disabilities Act ("ADA").  Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.  Jurisdiction is based on the Uniformed Services Employment and Reemployment Rights Act.

## PARTIES

3.      Ike R. Anderson is a citizen of the United States and a resident of the State of Utah.

4.      Defendant Zions Bancorporation National Association is an employer which does business in the State of Utah in Salt Lake County.

5.      On April 30, 2018, Plaintiff filed a Charge of Discrimination in which he alleged that Defendant had discriminated against him based on his disability, denied him a reasonable accommodation and retaliated against him.  Plaintiff filed his Charge of Discrimination within 180 days from the last date of the alleged harm.

2

6.     The Court may consider for its determination all events that occurred between November 1, 2017, the 180-day jurisdictional mark, and April 30, 2018, the date of filing.  The Court may treat all other prior events as being untimely for purposes of relief.  However, the Court may give weight to evidence of such events for evidentiary purposes.

7.     Plaintiff has met all jurisdictional requirements, as required by the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended.

8.     Plaintiff has exhausted his administrative remedies.

### III.  STATEMENT OF FACTS AND CLAIMS

### A.     STATEMENT OF FACTS

9.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 8 above as if alleged in full herein.

10.     Mr. Anderson alleges that he is an individual with a disability.  He alleges he has several impairments, including anxiety and depression.  He alleges such impairments substantially limit several major life activities, including sleeping, interacting with others, controlling his moods, and working.

11.     On May 9, 2016, Defendant hired Mr. Anderson to work as an intern.

12.     Mr. Anderson alleges that, while he was an intern, a female supervisor cut a hole in the ceiling tiles, put a camera in the ceiling by which she could watch and record him, took him to events outside of work and "made advances" towards him and engaged in other inappropriate behavior relating to him.

13.     In the summer of 2016, Mr. Anderson underwent a surgeries on right ankle and also on his right eye.  On August 8, 2016, Defendant hired Mr. Anderson as a regular, full-time employee and promoted Mr. Anderson to Data Governance Analyst II.

14.     Mr. Anderson alleges that, in the summer of 2016, after his surgery, he requested an accommodation for parking in an accessible space because of his ankle impairment, but was denied such accommodation.  Property management denied his ADA parking access after it had been approved by Human Resources and Mr. Anderson had obtained an ADA parking pass issued by the State of Utah.  After Mr. Anderson alleges he protested such a denial and, thereafter, he was eventually able to obtain the requested accommodation.

15.     Mr. Anderson alleges that, by so doing, he engaged in protected activity.

16.     Mr. Anderson alleges that, after he engaged in such protected activity, Defendant began to take adverse action against him.

4

17.     For example, Plaintiff alleges that, after returning from surgery, some of his  coworkers put an altered picture of him in a wheelchair on his bulletin board.

18.     On March 6, 2017, Defendant issued Plaintiff a documented verbal warning for allegedly failing to meet deadlines and job expectations.

19.     On April 19, 2017, Defendant issued Plaintiff a written warning for not improving after the verbal warning, in particular, with regards to, "[s]ubject knowledge, accuracy, and attention to detail", and "[l]ack of prioritization as well as trust and confidence in work ownership".

20.     On May 23, 2017, Defendant issued Plaintiff a written warning for continuing to lack consistency in meeting expectations of the previous written warning.  The memo stated, "You need to show immediate, significant, and sustained improvement to meet the minimum expectations of the position".  The warning was a, "[f]inal written warning and stating that it, "may result in further corrective action up to and including termination of employment".

21.     On August 1, 2017, Plaintiff applied for FMLA leave for a serious health condition/disability.  He alleges that he was approved therefor, and began an approved Family Medical Leave Act ("FMLA") leave.  Plaintiff continued on such leave from August 1, 2017 through October 23, 2017

22.     On October 18, 2017, Mr. Anderson's treating physician, Dennis
Scott, M.D. ("Dr. Scott"), filled out paperwork for Defendant indicating that, due to
Mr. Anderson's anxiety and depression, Mr. Anderson was currently unable to perform
"all" of the functions of his job.  The form stated that there would be episodic flare-ups
requiring some periods of absence from work.  It stated that the condition would
probably last for one year.

23.     During this time frame, as Mr. Anderson was getting ready to
return to work, Defendant requested Mr. Anderson to explain what would be the
maximum amount of time off which he might need due to his disability.

24.     In accordance with Defendant's request, on October 24, 2017, Mr.
Anderson submitted the above paperwork from Dr. Scott, as well as a request for 365
days of leave from October 2017 to October 2018.

25.     When Defendant received the paperwork and noticed that Dr.
Scott's paperwork mentioned intermittent leave and Mr. Anderson had requested 365
days of leave, Defendant asked Mr. Anderson why he was requesting such leave.  Mr.
Anderson explained that Defendant had requested him to identify the maximum
amount of time he might need and that he had been responding to Defendant's request.

26.     On or about October 24, 2017, Plaintiff underwent another
surgery.  Mr. Anderson submitted a doctor's note stating that he would need about one

6

month to recover from the surgery.  In response to this request, Defendant granted Mr. Anderson a leave of absence for one month.

27.     On October 24, 2017, Mr. Anderson began his leave.

28.     On November 24, 2017, Defendant sent an e-mail to Mr. Anderson.  This e-mail extended the leave granted to six weeks, the total amount available to Mr. Anderson before his leave was exhausted, and stated: "If you need to be out continuously beyond December 5, 2017, we will need more information from your doctor indicating your need to be out continuously ... As we explained, the current ADA paperwork from your doctor only indicates a request for intermittent time off".

29.     In response to this e-mail, Mr. Anderson resubmitted what he had submitted earlier on October 24, 2017 identifying the maximum amount of leave he might need from November 2017 until October, 2018 amounting to a request for an additional approximate 46 weeks of continuous leave.

30.     On November 30, 2017, Mike Forsgren ("Forsgren") e-mailed Mr. Anderson to ask for clarification regarding Mr. Anderson's request for accommodation as, "we are still seeing conflicting information from your medical provider ... there are portions of your paperwork that request intermittent time off and other places which state that a continuous one year leave is requested.  Please clarify which leave is needed; intermittent leave or continuous leave for a year ... After we receive your

answer I may need to contact your medical provider to obtain his or her concurrence

and to inquire whether there are any other job accommodations which  your medical

provider thinks would enable you to perform the essential functions of your job ...

please be advised that, because your personal illness leave will be expiring on

December 5, 2017, and you have exhausted your FMLA entitlements, the only leave

available thereafter is through the ADA [Americans with Disabilities Act].

Accordingly, we will need to have this issue clarified by you and your medical provider

before your current leave expires.  If you cannot meet this deadline please let us know

your reason(s).  Your scheduled return-to-work date remains December 6, 2017; if you

do not report to work on this date, or we do not hear from you by then, you will be

subject to the company attendance policy, which could lead to termination".

       31.    Mr. Anderson alleges that, in response to this November 30, 2017

e-mail, he replied, "I agree you should talk with Mr. Scott.  I gave him your number

and I'll give you his number as well.  I see in multiple places ... that Mr. Scott the

medical professional is requesting until next October 2018 ... My ADA claim is not

indefinite and is for a little over ten months ... There's absolutely no way I'll be coming

back to work  anytime soon.  It's not safe for me and I'm not medically fit for work at

this time".

32.     Mr. Anderson alleges that, sometime in between November 30, 2017, and December 5, 2017, Forsgren spoke with Mr. Anderson and Mr. Scott regarding the discrepancy in the paperwork submitted.  Scott and Mr. Anderson conveyed the message to Forsgren that, initially, they had thought that 90 days might be sufficient, but that Defendant had told them to ask for the maximum time Mr. Anderson might need to be off and so they had decided to request a year.

33.     During this communication, Mr. Anderson and Dennis Scott also requested alternate accommodations which might enable Mr. Anderson to return to work sooner, such as working from home, transferring to a new manager, and working from a new branch.  Defendant did not respond to these requests for alternative accommodation.

34.     Plaintiff alleges that Defendant should have accommodated him for this if not for the 46-week requested accommodation or for the alternative accommodations he had suggested.

35.     On December 5, 2017, Mr. Anderson was not able to return to work.

36.     On December 12, 2017, Defendant e-mailed Mr. Anderson, stating: "We tried to contact you a couple different times last Friday and again this morning.  We are providing the following information via email because we have not

9

been able to talk to you.  As you know, your recent request for personal illness leave

was granted through December 5, 2017.  Because you were not yet ready to return to

work, you requested an extended, continuous leave through October 2018".

37.     Defendant did not respond to this request for reasonable

accommodation, but informed Mr. Anderson that, because he had not returned to work,

on December 6, 2017, Defendant had unilaterally decided that there was "no

reasonable alternative but to terminate [Plaintiff's] employment, effective immediately

(December 12, 2017)".

38.     Mr. Anderson alleges there were a number of reasonable

alternatives to the termination of his employment, but alleges that, on December 12,

2017, Defendant simply stopped the ADA interactive reasonable accommodation

dialogue process and unilaterally terminated his employment.  Mr. Anderson alleges

Defendant's actions in doing so constitute a failure to accommodate and retaliation for

requesting a reasonable accommodation.

39.     On December 15, 2017, Mr. Anderson underwent throat surgery.

On or about December 26, 2017, he submitted a doctor's note to Defendant, stating

that he would need leave until January 2, 2018.  Defendant did not respond to this

submission.

**CAUSES OF ACTION**

10

## FIRST CAUSE OF ACTION
## PLAINTIFF WAS DENIED A REASONABLE ACCOMMODATION

40.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 39 above as if alleged in full herein.

41.    To state a prima facie case of failure to accommodate, Plaintiff must allege facts which establish, or tend to establish, that: (1) he is a person with a disability, as defined by the ADA; (2) he is "otherwise qualified" in that he was able to perform the essential functions of the job he held or desired, with or without or a reasonable accommodation; and (3) he requested a "plausibly reasonable accommodation".  *Punt v. Kelly Serv.,* 862 F 3d 1040, 1050 (10th Cir. 2017).

42.    If the employee satisfies that burden, the employer has the burden to present evidence "either (1) conclusively rebutting one or more elements of [the employee's] prima facie case [such as that the employer provided Plaintiff with a reasonable accommodation]; or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer".  *Id.*

43.    If the employer fails to satisfy that burden, Plaintiff's prima facie case establishes liability.  If the employer satisfies that burden, the burden shifts to the employee to establish that Defendant's explanation is false or pretextual.

44.    As set forth above, Mr. Anderson alleges he is a person with a disability.

11

45.     Mr. Anderson alleges he is otherwise qualified to do the job he held or desired.

46.     Mr. Anderson alleges he made the following timely requests for accommodation: (1) when he requested 365-days of leave on October 24, 2017, (2) when Mr. Anderson and Dennis Scott also requested alternate accommodations of working from home, transferring to a new manager, and working from a new branch; and (3) when he submitted a doctor's note stating he would need to be off work from November 24, 2017 to at least January 2, 2018.

47.     He alleges Defendant denied such requests.

48.     As to the first alleged denial of accommodation, Mr. Anderson alleges that the only reason that he and Dr. Scott requested a leave of that length was because Defendant had insisted that they ask for the maximum amount of time off that Mr. Anderson might need.

49.     Mr. Anderson alleges he did so and yet Defendant terminated his employment.

50.     As to the second alleged denial of accommodation, Mr. Anderson alleges that, even if requesting a leave of absence for 365 days was not a reasonable accommodation, requesting a leave from November 24, 2017 to January 1, 2018 was a request for a reasonable accommodation.  Yet, Defendant terminated his employment.

51.     Mr. Anderson's allegations establish a prima facie case of failure to accommodate.

**SECOND CAUSE OF ACTION**
**THERE IS SUFFICIENT EVIDENCE TO SHOW**
**PLAINTIFF'S DISABILITY MOTIVATED**
**DEFENDANT'S DECISION TO TERMINATE HIS EMPLOYMENT**

52.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 51 above as if alleged in full herein.

53.     To state a prima facie case of discrimination based on disability, Plaintiff must allege facts which establish, or tend to establish, that: (1) he is a person with a disability in that he has an impairment which is substantially limiting to a major life activity; (2) he was otherwise qualified in that he could perform the essential duties of the position he held or desired, with or without reasonable accommodation; (3) Defendant subjected him to an adverse action; and (4) the circumstances surrounding the adverse action give rise to an inference that the Defendant subjected him to an adverse action because of his disability.  *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802 (1973).

54.     As alleged above, Mr. Anderson alleges he is person with a disability.  Mr. Anderson's allegations satisfy the first element.

55.     Mr. Anderson alleges that he is a qualified individual with a disability with a disability, in that he could have performed the essential functions of

13

the job he held or desired with reasonable accommodations, such as working from

home, transferring to a new manager or working from a new branch.

56.     Mr. Anderson's allegations establish the second element.

57.     Mr. Anderson alleges that, despite him being a qualified

individual with a disability, Defendant took adverse action against him in that it,

among other things, terminated his employment.

58.     With Mr. Anderson's allegations establishing a prima facie case of

discrimination, the burden shifts to the Defendant to articulate a legitimate, non-

discriminatory reason for taking the adverse action.  *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802-04 (1973).

59.     On information and belief, Mr. Anderson alleges that Defendant

has asserted that it terminated Plaintiff's employment because Mr. Anderson was

performing poorly, was on a final warning, and did not return to work at the specified

return date of December 5, 2017.

60.     Once the Defendant articulates a legitimate, non-discriminatory

reason for its actions, the burden shifts back to Mr. Anderson to show the articulated

reason is a pretext.  Pretext may be demonstrated by showing: (1) it is more likely than

not the Defendant's actions were motivated by a discriminatory reason; or (2) the

Defendant's articulated reason is not credible.  *McKnight v. Kimberly Clark Corp.,* 149

14

F.3d 1125, 1129 (10th Cir. 1998).  An employee must "produce evidence that the employer did more than get it wrong [and] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda".

61.     Mr. Anderson alleges that the circumstances as to the feasibility of accommodation he was requesting support an inference that the Defendant terminated Mr. Anderson's employment not because of his performance or because of his disciplinary history, but because of his disability and his Military Service and disabilities experienced during and due to his Military Service.

62.     Mr. Anderson's allegations establish a prima facie case of discrimination on the basis of disability and satisfy his burden of alleging pretext.

### THIRD CAUSE OF ACTION
### DEFENDANT SUBJECTED PLAINTIFF TO UNLAWFUL RETALIATION

63.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 62 above as if alleged in full herein.

64.     In order to state a prima facie case of retaliation, Mr. Anderson must allege facts which establish, or tend to establish, that: (1) he engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant subjected him to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.

15

*See Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Railway Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

65.    The Tenth Circuit Court has held that requests for reasonable accommodation can be protected activity under the ADA.  "For an ADA retaliation claim, a request for accommodation is adequate if it is "sufficiently direct and specific, giving notice that [the employee] needs a special accommodation".  *Foster v. Mt. Coal Co., LLC,* 830 F.3d 1178, 1188 (10th Cir. 2016) (quoting *Calero-Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 23 (lst Cir. 2004)).

66.    Mr. Anderson alleges he engaged in protected activity on several occasions, including when he requested accommodations on October 24, 2017, and when he again renewed his requests for reasonable accommodation on November 24, 2017, and November 30, 2017.

67.    Mr. Anderson's allegations satisfy the first element in a prima facie case of retaliation.

68.    An adverse action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter Plaintiff or others from engaging in a protected activity.  *Rochon v. Gonzales,* 438 F.3d 1211, 1218 (D.C. Cir. 2006).  In regards to retaliatory action, the courts have noted that adverse treatment also includes

16

any act that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* at 1219.

69.     Mr. Anderson alleges Defendant took adverse action against him on December 12, 2017 when it terminated his employment.

70.     Mr. Anderson's allegations satisfy the second element in a prima facie case of retaliation.

71.     Mr. Anderson alleges that circumstances support the inference of a causal connection between his protected activity and the adverse action the Defendant thereafter took against him. A "causal connection may be demonstrated by evidence of circumstances that justify an inference  of retaliatory motive, such as proteeted conduct closely followed by an adverse action". *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting *Burrus v. United Tel Co. of Kansas Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)).  For example, a one-and-one-half-month period between the protected activity and adverse action may support the inference.  In contrast, a three-month period alone, is insufficient support the inference. *Id. (quoting Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)).  Mr. Anderson alleges that the less-than-six-week period between the October 24, 2017, November 24, 2017 and November 30, 2017 requests for accommodation (protected activity) and the December 12, 2017 termination supports an inference of causal connection.

17

72.     Mr. Anderson alleges that the circumstances support an inference that the Defendant terminated Mr. Anderson's employment not because of his performance or disciplinary status, but because of his disability.

73.     Once Mr. Anderson establishes a prima facie case of discrimination, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for taking the adverse action.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).

74.     On information and belief, Mr. Anderson alleges that Defendant has asserted that it terminated Plaintiff's employment because Mr. Anderson was performing poorly, was on a final warning, and did not return to work at the specified return date of December 5, 2017.

75.     Once the Defendant articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Mr. Anderson to show the articulated reason is a pretext.  Pretext may be demonstrated by showing: (1) it is more likely than not the Defendant's actions were motivated by a discriminatory reason; or (2) the Defendant's articulated reason is not credible.  *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998).  An employee must "produce evidence that the employer did more than get it wrong [and] must come forward with evidence that the

employer didn't really believe its proffered reasons for action and thus may have been

pursuing a hidden discriminatory agenda.

76.     Mr. Anderson alleges that his actions in engaging in protected

activity actually motivated Defendant's decision to terminate him.

77.     Mr. Anderson alleges that the circumstances as to the feasibility of

the accommodations he was requesting support an inference that the Defendant

terminated Mr. Anderson's employment not because of his performance or because of

his disciplinary history, but because of his disability.

78.     Mr. Anderson's allegations satisfy the burden of establishing a

prima facie case of retaliation and satisfy his burden of alleging pretext.

### FOURTH CAUSE OF ACTION
### VIOLATION OF USERRA

79.     Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 78 above as if alleged in full herein.

80.     On December 15, 2016, Mr. Anderson alleges that, in an e-mail,

he informed his supervisor (Robert Gerber) that he had orders to leave to Military Drill

that month and a Military School starting in January 2017, which would also involve

once a month weekend drills and the annual summer two-week drill period.  Mr.

Anderson alleges his supervisor didn't want to allow him the time off that is required

and his supervisor subsequently penalized him for his service in the Military and the time off such service required.

81.     Mr. Anderson alleges that, before he requested time off for Military Service, he had received only positive feedback from his supervisor regarding his performance.  Mr. Anderson alleges that, on January 13, 2017, his supervisor attempted to terminate him for "misconduct", but the claim was changed to job performance.

82.     Mr. Anderson alleges that, in February 2017, ESGR Ombudsman attempted to mediate the situation between Mr. Anderson and his supervisor regarding his Military Service, but the parties did not make any progress.

83.     Thereafter, in May 2017, Mr. Anderson requested help from the Judge Advocate General.  The case was assigned to Lt. Col. Boice.  In May 2017, Mr. Anderson alleges that, in an email to Zions, Lt. Col. Boice Staff Judge Advocate reached out to Zions with the following statement: "From the documents he sent me I too have some concerns about the timing of this termination and the motive behind it in relation to his military service earlier this year that appeared to be a problem with his supervisor.  I would really like to speak with you on this issue as the Military Liaison for Zion's Bank to ask you some questions and ensure you are fully read in on this issue".

84.     Said conversion did not resolve the dispute.  Mr. Anderson alleges that is Military Service, past and ongoing, continued to be a source of inconvenience and irritation with his supervisor, and Mr. Anderson alleges it was a contributing factor to Defendant's decision to terminate his employment.

85.     Mr. Anderson alleges that such actions by Defendant and Defendant's supervisor violated the Uniformed Services Employment and Reemploymkent Rights Act.

86.     Such violations entitled Mr. Anderson to claim all damages flowing from such violations, including lost wages, lost benefits, treble damages, court costs, attorney's fees and prejudgment interest.

## IV.  DAMAGES

87.     Mr. Anderson alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, financial stress, aggravation of his anxiety and depression and emotional distress and damages to his employability.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.  Finding and declaring that Defendant failed to reasonably accommodate, discriminated against Mr. Anderson on the basis of disability and retaliated against Mr. Anderson, in violation of the ADA;

2.  Awarding Mr. Anderson "make whole" relief, by awarding Mr. Anderson lost wages and benefits from the time Defendant terminated Mr. Anderson until it reinstates him;

3.  In lieu of reinstatement, awarding Mr. Anderson the lost wage and lost benefit differential from the time Defendant terminated Mr. Anderson's employment until Mr. Anderson secures comparable employment, or for a period of five years, whichever occurs first;

4.  Awarding Mr. Anderson his reasonable attorney's fees and costs;

5.  Awarding Mr. Anderson such other legal and equitable relief as may be just and appropriate.

DATED this 16th  day of October, 2019.


    */s/ David J. Holdsworth*
    David J.  Holdsworth
    *Attorney for Plaintiff*

VERIFICATION

Ike R. Anderson, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.

_/s/ Ike R. Anderson_____
Ike R. Anderson

SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of October, 2019.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:       RESIDING AT: _____

_____

VERIFICATION

Ike R. Anderson, being first duly sworn, upon his oath, deposes and says

that he is the Plaintiff in the above-entitled action, that he has read the foregoing

COMPLAINT and understands the contents thereof, and the allegations made therein

are true of his own knowledge, except as to those matters alleged on information and

belief which he believes to be true.

_____

Ike R. Anderson

SUBSCRIBED AND SWORN to before me, a Notary Public, this _30th_

day of September, 2019.



REBEKAH IRENE CLARK
Notary Public - State of Utah
Comm. No. 703566
My Commission Expires on
Dec 6, 2022

NOTARY PUBLIC   Rebekah Clark

MY COMMISSION EXPIRES:
December 6, 2022

RESIDING AT: _299 N_
_Marketplace Dr. Centerville_
_UT 94014_