FILED
2022 FEB 28 AM 6:58
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IKE R. ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>ZIONS BANCORPORATION NATIONAL ASSOCIATION,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 34)**<br><br>Case No. 2:19-cv-00771<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Ike R. Anderson brought this action against his former employer, Zions Bancorporation National Association ("Zions"), asserting claims under the Americans with Disabilities Amendments Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*[1] (Compl. ¶¶ 40–86, Doc. No. 2.) Mr. Anderson alleges Zions violated the ADA by denying his request for a reasonable accommodation, retaliating against him, and wrongfully terminating him after he requested a leave of absence due to depression and anxiety. (*Id.* ¶¶ 10, 40–78.) He also alleges Zions terminated him, in part, because of his military service, in violation of USERRA. (*Id.* ¶¶ 79–86.)

Zions moved for summary judgment on all claims. (Mot. for Summ. J. ("Mot."), Doc. No. 34.) After full briefing, the court held a hearing on the motion on January 18, 2022. (*See*

---

[1] The complaint also references Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Compl. ¶¶ 1–2, Doc. No. 2), but it does not assert causes of action under Title VII.

1

Doc. No. 51.) Because Mr. Anderson has not identified evidence sufficient to support essential elements of his claims, the court[2] grants Zions' motion and enters summary judgment in favor of Zions on all claims.

## SUMMARY JUDGMENT STANDARD

Courts grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (internal quotation marks omitted). In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). But "where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted).

In making or responding to a summary judgment motion,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

[2] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 19.)

>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

### RELEVANT FACTS

On May 9, 2016, Zions hired Mr. Anderson as in intern in its military intern program. (Ex. 1 to Mot., Deposition of Ike Anderson ("Anderson Dep.") 14:7–15, Doc. No. 34-2; *see also* Mot., Statement of Undisputed Facts ("SUMF") ¶ 1, Doc. No. 34; Opp'n, Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("Response to SUMF") ¶ 1, Doc. No. 34.) In July or August 2016, Mr. Anderson applied to become a data governance analyst at Zions. (Ex. 2 to Mot., Decl. of Robert Gerber ("Gerber Decl.") ¶ 3, Doc. No. 34-3.) When Mr. Anderson interviewed for this position with Robert Gerber, Mr. Gerber was aware Mr. Anderson was an active-duty member of the United States military.[3] (*Id.* ¶ 5.) On August 8, 2016, Mr. Anderson began working as a full-time Zions employee as a data governance analyst, under the supervision of Mr. Gerber and Laura Cecil. (*See* Anderson Dep. 63:10–14, Doc. No. 34-2; *see also* Mot., SUMF ¶ 6, Doc. No. 34, Opp'n, Response to SUMF ¶ 6, Doc. No. 38.)

---

[3] Mr. Anderson purports to dispute this fact, but he fails to cite admissible evidence supporting his position. Instead, he cites only an unsworn bullet-point list of allegations and an unsworn letter from 2016, which he submitted as exhibits to his opposition but did not attach to any affidavit or declaration. (*See* Opp'n, Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("Response to SUMF") ¶ 4, Doc. No. 38 (citing Exs. 2 & 22 to Opp'n, Doc. Nos. 38-2 & 38-22).) Accordingly, this fact is undisputed.

For the duration of his employment, Mr. Anderson was an active-duty member of the United States military. (Mot., SUMF ¶ 7, Doc. No. 34; Opp'n, Response to SUMF ¶ 7, Doc. No. 38.) Any time Mr. Anderson had military obligations, including military drills, Zions permitted him to leave work to attend to those obligations. (Gerber Decl. ¶ 7, Doc. No. 34-3.)

In July 2016, Mr. Anderson underwent surgeries on his right ankle and right eye. He requested a disabled parking spot as an ADA accommodation. Zions granted that request. (Anderson Dep. 146:15–148:21, Doc. No. 34-2; Gerber Decl. ¶ 13, Doc. No. 34-3.) He also requested a standing desk as an accommodation, which Zions granted.[4] (Anderson Dep. 153:2–24, Doc. No. 34-2; Gerber Decl. ¶ 14, Doc. No. 34-3.)

On August 1, 2017, Mr. Anderson submitted a request for leave under the Family and Medical Leave Act ("FMLA") after having knee surgery. Zions granted his request for leave from that date until October 23, 2017. (Anderson Dep. 155:1–156:24, Doc. No. 34-2; Gerber Decl. ¶ 15, Doc. No. 34-3; Ex. 3 to Mot., Decl. of Michael Forsgren ("Forsgren Decl.") ¶ 4, Doc. No. 34-4.)

On October 24, 2017, Mr. Anderson submitted a request for additional time off to recover from his surgery and to accommodate his depression and anxiety. (Forsgren Decl. ¶ 5, Doc. No. 34-4; Ex. B to Forsgren Decl., (Non-FMLA) Personal Illness Leave Request Form (Oct. 24, 2017) ("October 24 Leave Request"), Doc. No. 34-4 at 13–19.) Mr. Anderson's therapist completed portions of the request form. (See October 24 Leave Request, Doc. No. 34-4 at 14–

---

[4] Mr. Anderson purports to dispute that Zions granted this request as a disability accommodation, specifically, but he does not cite any evidence or materials in the record to support his position. (See Opp'n, Response to SUMF ¶ 11, Doc. No. 38.) Accordingly, this fact is undisputed.

4

19.)  The therapist indicated Mr. Anderson had anxiety and depression which would likely last one year.  (*Id.* at 15, 18.)  The therapist checked a box on the form indicating Mr. Anderson would not be incapacitated for a single continuous period of time, and he wrote "episodic flare-ups of anxiety and depression may require hours and/or days of absence from work."  (*Id.* at 16–17.)

Zions granted the October 24 leave request as an ADA accommodation and gave Mr. Anderson six additional weeks of leave.  (Forsgren Decl. ¶ 5, Doc. No. 34-4.)  Zions designated Mr. Anderson's return-to-work date as December 6, 2017, and informed him in an email: "If you do not report to work on this date or we do not hear from you, then you would be subject to the company attendance policy, which could lead to termination."  (Ex. A to Forsgren Decl., Email from S. Napoles to I. Anderson (Nov. 24, 2017), Doc. No. 34-4 at 7.)  The email stated that if Mr. Anderson needed continuous leave beyond December 5, 2017, he would need to provide more information from his doctor because "the current ADA paperwork from your doctor only indicates a request for intermittent time off."  (*Id.*)

On November 24, 2017, Mr. Anderson submitted an additional ADA leave request, seeking one year of leave, from October 24, 2017 to October 24, 2018, to accommodate his anxiety and depression.  (Ex. C to Forsgren Decl., (Non-FMLA) Personal Illness Leave Request Form (Nov. 24, 2017) ("November 24 Leave Request"), Doc. No. 34-4 at 20–26.)  The therapist again checked the box on the form indicating Mr. Anderson would not be incapacitated for a single continuous period of time.  (*Id.* at 22.)  However, on another page, he wrote: "Patient will require a full year (Oct 24, 2017–Oct 24, 2018) leave, as flare-ups occur daily and without exact predictability."  (*Id.* at 24.)  According to Mr. Anderson, his therapist indicated a year was

5

required because Zions' human resources ("HR") department instructed Mr. Anderson to list the maximum amount of leave he would need.  (Ex. 1 to Opp'n, Anderson Dep. 169:22–170:2, Doc. No. 38-1.)

After receiving this request, a Zions HR representative emailed Mr. Anderson to clarify whether he was requesting intermittent leave or continuous leave for a year.  (Ex. D to Forsgren Decl., Email from M. Forsgren to I. Anderson (Nov. 30, 2017), Doc. No. 34-4 at 31.)  Mr. Anderson responded that the therapist was requesting "until next October 2018 off," and provided his therapist's phone number.  (Ex. D to Forsgren Decl., Email from I. Anderson to M. Forsgren (Nov. 30, 2017), Doc. No. 34-4 at 29–30.)  He also mentioned he was having another surgery on December 15 and stated "[t]here's absolutely no way I'll be coming back to work anytime soon."  (*Id.*)

The HR representative later held a phone call with both Mr. Anderson and his therapist.  (*See* Ex. D. to Forsgren Decl., Email from M. Forsgren to I. Anderson (Dec. 4, 2017), Doc. No. 34-4 at 28–29.)  In a follow-up email on December 4, the HR representative wrote:

> In summary of our conversation today, you and your medical provider clarified that you were requesting to be out on continuous leave from December 5, 2017 until October 2018.  You also made it clear that you were not requesting any intermittent time off.  You and your doctor also said that, other than continuous leave, there were not any job accommodations that would enable you to perform your job duties.

(*Id.*)  The email also indicated paperwork regarding Mr. Anderson's prior accommodation request for disabled parking had been provided to him.  (*Id.*)  Mr. Anderson responded the same day, stating: "That synopsis seems correct except I never received any paperwork" regarding the prior accommodation request.  (Ex. D to Forsgren Decl., Email from I. Anderson to M. Forsgren (Dec. 4, 2017), Doc. No. 34-4 at 28.)

Zions considered Mr. Anderson's leave request and determined a one-year leave of absence was not reasonable and would impose an undue hardship on the company.[5] (Forsgren Decl. ¶ 10, Doc. No. 34-4.) Zions decided to deny Mr. Anderson's request for continuous leave through October 2018. (Forsgren Decl. ¶ 10, Doc. No. 34-4.)

Mr. Anderson did not return to work on December 6, 2017, or any time thereafter.[6] (Forsgren Decl. ¶ 11, Doc. No. 34-4.) Zions' HR representatives emailed Mr. Anderson on December 7 and 8, attempting to schedule a phone call to discuss Zions' decision on his leave request. (Forsgren Decl. ¶ 12, Doc. No. 34-4; Exs. E & F to Forsgren Decl., Emails from S. Napoles to I. Anderson (Dec. 7 & 8, 2017), Doc. No. 34-4 at 35–39.) Although Mr. Anderson indicated he was available at the proposed time for the call, Zions was unable to reach him by phone. (*See* Forsgren Decl. ¶ 12, Doc. No. 34-4; Ex. F to Forsgren Decl., Email from I. Anderson to S. Napoles (Dec. 7, 2017), Doc. No. 34-4 at 38.) On December 12, 2017, Zions informed Mr. Anderson by email that his leave request had been denied and his employment was terminated. (Forsgren Decl. ¶ 13, Doc. No. 34-4; Ex. G to Forsgren Decl., Email from M. Forsgren to I Anderson (Dec. 12, 2017), Doc. No. 34-4 at 41.)

---

[5] According to Mr. Anderson's supervisor, Mr. Gerber, permitting Mr. Anderson to take a one-year leave of absence would have led to missed deadlines throughout the department, loss of productivity, increased overtime, and decreased morale, among other hardships. (Gerber Decl. ¶ 18, Doc. No. 34-2.)

[6] Mr. Anderson purports to dispute this fact, alleging he reported to work at a different branch on the day Zions terminated his employment. (Opp'n, Response to SUMF ¶ 22, Doc. No. 38.) However, he does not support this allegation with any citation to evidence or materials in the record. Therefore, this fact is undisputed.

## ANALYSIS

Mr. Anderson asserts three causes of action under the ADA: (1) failure to provide a reasonable accommodation, (2) wrongful termination based on his disability, and (3) retaliation. (Compl. ¶¶ 40–78, Doc. No. 2.) He also asserts a claim for wrongful termination under USERRA. (*Id.* ¶ 79–86.) The court examines each claim in turn.

### A. Failure-to-Accommodate Claim

To succeed on a failure-to-accommodate claim, a plaintiff must make a prima facie case that "(1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) [the employer] refused to accommodate her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). If the plaintiff establishes a prima facie case, the burden then shifts to the employer "to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (internal quotation marks omitted).

Zions challenges the second and third elements of a prima facie case, arguing Mr. Anderson cannot demonstrate he was "otherwise qualified" to perform the essential functions of the job, and his request for a one-year leave of absence was unreasonable. (Mot. 7–15, Doc. No. 34.) Zions also argues the requested leave of absence would have caused undue hardship. (*Id.* at 15–17.)

1. Whether Mr. Anderson Was Otherwise Qualified

A person is "otherwise qualified" if she can perform the essential functions of the job "with or without reasonable accommodation." *Aubrey*, 975 F.3d at 1006. To meet this second

element, a plaintiff must show "there was a reasonable accommodation that would have enabled her to perform the essential functions of her job, at the time she was terminated or soon thereafter." (*Id.*)

Mr. Anderson has not identified a reasonable accommodation which would have enabled him to perform his job. The accommodation Mr. Anderson ultimately proposed—a continuous leave of absence through October 2018—was unreasonable. Zions describes this as a one-year leave request, beginning in October 2017 (when Mr. Anderson was first granted leave for depression and anxiety). (*See* Mot. 5, Doc. No. 34.) Mr. Anderson has characterized it as a ten-month leave request, beginning in December 2017 (when his approved leave ended). (*See* Ex. D to Forsgren Decl., Email from I. Anderson to M. Forsgren (Nov. 30, 2017), Doc. No. 34-4 at 29.) Either way, it was a request for an unreasonable accommodation. In *Hwang v. Kansas State University*, the Tenth Circuit held that while a brief absence may sometimes amount to a reasonable accommodation, a leave period spanning more than six months does not. 753 F.3d 1159, 1162 (10th Cir. 2014); *see also id.* at 1161 ("It perhaps goes without saying that an employee who isn't capable of working for so long isn't an employee capable of performing a job's essential functions—and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation."). As the court noted, "reasonable accommodations . . . are all about enabling employees to work, not to not work." *Id.* at 1162. Therefore, Mr. Anderson's proposed accommodation of at least ten months of continuous leave was not reasonable.

Mr. Anderson has not identified evidence that any other accommodation would have enabled him to perform his essential job functions. Shortly before his termination, Mr. Anderson

9

confirmed in an email to Zions that no accommodations—other than continuous leave—would enable him to perform his job.  (Ex. D. to Forsgren Decl., Emails between M. Forsgren and I. Anderson (Dec. 4, 2017), Doc. No. 34-4 at 28–29.)  In his deposition, Mr. Anderson identified working from home as another possible accommodation, but he testified he didn't know if he could have done his job even with this accommodation.  (Anderson Dep. 144:15–145:8, Doc. No. 38-1.)  This testimony is insufficient to support a finding that working from home would have enabled Mr. Anderson to perform his job.  And although Mr. Anderson claims he requested other types of accommodations, as discussed below, he has not presented evidence these accommodations would have enabled him to perform the essential functions of his job.

Because he fails to identify evidence of a reasonable accommodation which would have enabled him to perform his job, Mr. Anderson cannot show he was "otherwise qualified" under the second element of his prima facie case.

    2.   <u>Whether Mr. Anderson Requested a Plausibly Reasonable Accommodation</u>

Even if Mr. Anderson could show he was otherwise qualified, he has failed to present evidence that he requested a reasonable accommodation.

To meet the third element of his prima facie case, Mr. Anderson must establish he "requested a plausibly reasonable accommodation." *Aubrey*, 975 F.3d at 1006.  "To facilitate the reasonable accommodation, [t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties." *Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1315 (10th Cir. 2017) (alteration in original) (internal quotation marks omitted).  "The interactive process requires the good faith participation of both the employer and

10

employee" to determine whether there is a reasonable accommodation which would enable the employee to perform her job. *Aubrey*, 975 F.3d at 1007 (emphasis omitted).

As set forth above, Mr. Anderson's request for continuous leave of at least ten months was unreasonable under Tenth Circuit precedent.  However, Mr. Anderson asserts he requested this length of time only because Zions asked him to request the maximum amount of time he might need, and points to his request forms which indicated his leave would not be continuous. (Opp'n 30–31, Doc. No. 38.)  He also contends he requested other accommodations which Zions failed to consider, including (1) providing Zions with "touchpoints," i.e., periodic updates as to his status and ability to return to work; (2) working from home; (3) transferring to another branch; and (4) other suggestions listed by his therapist on his November 24 request form.[7]  (*Id.* at 29.)  Finally, he argues Zions failed to participate in the required interactive process because it denied his request for continuous leave without discussing alternatives.  (*Id.* at 31–33.)

Even assuming Zions, at some point, instructed Mr. Anderson to request the maximum amount of leave he might need, this fact does not render Mr. Anderson's leave request reasonable.  Mr. Anderson offers no evidence that he would have requested a reasonable leave period absent Zions' instruction.  More critically, Zions later sought clarification from Mr. Anderson regarding the nature of his request, and Mr. Anderson confirmed the only accommodation he was requesting was continuous leave through October 2018—and no other accommodation would enable him to perform his job duties.  (*See* Ex. D. to Forsgren Decl.,

---

[7] The therapist suggested Zions should "provide comprehensive training and guidance for essential tasks" and "remove any threats of punitive personnel action." (Ex. C to Forsgren Decl., November 24 Leave Request, Doc. No. 34-3 at 18.)

Emails between M. Forsgren and I. Anderson (Dec. 4, 2017), Doc. No. 34-4 at 28–29.)  There is no evidence that Zions limited Mr. Anderson's ability to request a different length of leave or other accommodations.

To the extent Mr. Anderson previously requested other accommodations, he expressly abandoned those requests in his December 4 email confirming that his only accommodation request was for continuous leave through October 2018, he was not requesting intermittent leave, and no other accommodation would enable him to perform his job duties.  (*See id.*)  In any event, Mr. Anderson has not demonstrated any of the other accommodations he suggested were reasonable, or that they would have enabled him to perform his job.  Mr. Anderson's proposal to provide Zions with "touchpoints" was essentially a request for indefinite leave, which the Tenth Circuit has held is not a reasonable accommodation.  *Hudson v. MCI Telecoms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *see also Brown v. Unified Sch. Dist. No. 500*, 368 F. Supp. 2d 1250, 1258 (D. Kan. 2005) ("[A] request for indefinite leave cannot constitute 'reasonable accommodation' as 'such a leave request does not allow the employee to perform the essential functions of the job in the near future.'" (emphasis omitted) (quoting *Hudson*, 87 F.3d at 1169)).  And, as noted above, Mr. Anderson has not presented evidence that working from home or the other accommodations he suggested would have enabled him to perform his essential job functions.  Zions was not required to provide accommodations which Mr. Anderson expressly confirmed he was not seeking and would not enable him to do his job.

Finally, Zions adequately participated in the interactive process.  The uncontroverted evidence shows Zions communicated with Mr. Anderson to clarify the nature of his accommodation request, including participating in a phone call with his therapist.  Even after

denying his request for continuous leave, Zions made multiple attempts to contact Mr. Anderson to discuss its decision with him. Zions continued these efforts for six days after Mr. Anderson failed to return to work before terminating him. On this record, no reasonable factfinder could find Zions failed to participate sufficiently in the interactive process.

Mr. Anderson cannot establish essential elements of his prima facie case because he cannot show he requested a reasonable accommodation or that he was otherwise qualified. Accordingly, Zions is entitled to summary judgment on the failure-to-accommodate claim.

B. Claim of Wrongful Termination Based on Disability

Mr. Anderson next claims Zions discriminated against him on the basis of his disability when it terminated him.

Where, as here, a plaintiff offers no direct evidence of discriminatory animus, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Aubrey*, 975 F.3d at 1014. The plaintiff must first demonstrate a prima facie case by showing (1) she was disabled; (2) she was otherwise qualified; and (3) she "suffered discrimination by an employer . . . because of that disability." *Equal Emp't Opportunity Comm'n v. C.R. England*, 644 F.3d at 1028, 1037–38 (10th Cir. 2011) (internal quotation marks omitted). "In order to demonstrate discrimination, a plaintiff generally must show that [she] has suffered an adverse employment action because of the disability." *Id.* at 1038 (internal quotation marks omitted). "This requires some affirmative evidence that the disability was a determinative factor in [the employer's] decision." *Edmonds-Radford v. Southwest Airlines Co.*, __ F.4th __, 2021 U.S. App. LEXIS 33124, at *24 (10th Cir. 2021). The burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

13

actions." *C.R. England*, 644 F.3d at 1038 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–03). "If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.'" *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 804–05).

Mr. Anderson cannot meet the second element of a prima facie case. As set forth above, Mr. Anderson cannot show he was "otherwise qualified" because he has not presented evidence showing he was capable of performing his job with or without a reasonable accommodation. For this reason alone, his discrimination claim must fail.

Even if Mr. Anderson could establish a prima facie case, Zions proffered a legitimate, nondiscriminatory reason for terminating Mr. Anderson: he failed to return to work after his leave expired, and no reasonable accommodation was available. (Mot. 21, Doc. No. 34.) Mr. Anderson fails to present evidence sufficient to support a finding that this nondiscriminatory reason was pretextual.

"A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018) (internal quotation marks omitted). "This is often accomplished by revealing weakness, implausibility, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id.* (internal quotation marks omitted).

Mr. Anderson cannot demonstrate Zions' proffered reason was factually false, nor has he identified weaknesses or inconsistencies which would support a finding that Zions' proffered reason is unworthy of credence. Mr. Anderson does not dispute he failed to return to work by

December 6, but he argues he was unable to return due to his disability. (Opp'n 39, Doc. No. 38.) Even assuming this is true, Mr. Anderson has failed to identify a reasonable accommodation which would enable him to perform his essential job functions. Because Zions was not required to grant an unreasonable accommodation, its denial of Mr. Anderson's unreasonable accommodation request is not evidence of discrimination. *Cf. Aubrey*, 975 F.3d at 1014 (noting discrimination under the ADA includes not making *reasonable* accommodations for an otherwise qualified individual). And Mr. Anderson has not identified any other evidence which would support an inference that discriminatory animus played a role in his termination.

For these reasons, Zions is entitled to summary judgment on Mr. Anderson's claim that Zions discriminated against him based on his disability when it terminated him.

C. Retaliation Claim

Mr. Anderson next claims he was terminated in retaliation for protected activity, namely, for requesting an accommodation.

Where a plaintiff relies on circumstantial evidence to establish a retaliation claim, the *McDonnell Douglas* burden-shifting framework applies. *Lincoln*, 900 F.3d at 1209. To establish a prima facie case of retaliation under the ADA, an employee must show (1) she engaged in protected activity; (2) she suffered an adverse employment action by her employer either after or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the adverse action. *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016). If the employer proffers a legitimate, nondiscriminatory reason for the termination, the burden shifts back to the plaintiff to show this stated reason was pretextual. *Id.* at 1193–94.

Mr. Anderson engaged in protected activity when he requested accommodations related to his anxiety and depression on October 24 and November 24.  *See Lincoln*, 900 F.3d at 1209 (noting a request for accommodation is protected activity).  And Mr. Anderson was terminated after engaging in this protected activity.  Thus, Mr. Anderson has established the first and second elements of a prima facie case of retaliation.

Mr. Anderson may show a causal connection between the accommodation requests and his termination, as required to satisfy the third element, based on the temporal proximity between his final accommodation request and his termination.  A causal connection may be inferred solely based on close temporal proximity between the protected activity and the adverse action.  *See Foster*, 830 F.3d at 1191; *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  "[A] one and one-half month period between protected activity and adverse action may, by itself, establish causation." *Anderson*, 181 F.3d at 1179 (citing *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994)).  Here, Mr. Anderson's November 24 accommodation request was less than a month before his termination on December 12.  This temporal proximity is sufficient, at the prima facie stage, to show a causal connection.

However, Mr. Anderson cannot demonstrate Zions' proffered nondiscriminatory reason for termination was pretext for retaliation.  As discussed above, Mr. Anderson cannot show Zions' proffered reason for terminating him was factually false, nor has he identified weaknesses or inconsistencies which would support a finding that Zions' proffered reason is unworthy of credence.  It is undisputed Mr. Anderson did not return to work by December 6, and he has not identified any reasonable accommodation which would have enabled him to perform his job duties.  Zions' denial of Mr. Anderson's unreasonable accommodation request is not evidence of

retaliatory intent. And Mr. Anderson has offered no other evidence supporting an inference of retaliatory intent. Thus, Mr. Anderson has failed to present evidence sufficient to support a finding that his termination was retaliatory.

Accordingly, Zions is entitled to summary judgment on Mr. Anderson's retaliation claim.

D. USERRA Claim

Finally, Mr. Anderson claims Zions violated USERRA, alleging his military service was a "contributing factor to [Zions'] decision to terminate his employment." (*See* Compl. ¶ 84, Doc. No. 2.)

USERRA prohibits employers from denying military service members "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" on the basis of the employee's status as a member of the United States military. 38 U.S.C. § 4311(a). To prevail on this claim, a plaintiff "bear[s] the initial burden of showing by a preponderance of the evidence that [his or her] military service was a substantial or motivating factor in the adverse employment action." *Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (unpublished) (alterations in original) (internal quotation marks omitted). "[G]eneral assertions of less agreeable employment circumstances, which do not describe drastically different job duties, d[o] not constitute an adverse action or denial of a benefit of employment." *Durant v. MillerCoors, LLC*, 415 F. App'x 927, 930 (10th Cir. 2011) (unpublished). "If the employee meets his initial burden, the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* (internal quotation marks omitted).

17

Mr. Anderson has failed to identify evidence sufficient to support a finding that his military service was a substantial or motivating factor in his termination or any other adverse employment action. Mr. Anderson has presented no evidence of a connection between his military service and Zions' decision to terminate him in December 2017. In his opposition, Mr. Anderson alleges his supervisor retaliated against him for taking time off work for military duties, including by attempting to terminate him in January 2017 and placing him on a performance improvement plan. (Opp'n, Response to SUMF ¶ 8, Doc. No. 38.) But he fails to support his allegations with citations to admissible evidence.[8] Moreover, Mr. Anderson has presented no evidence of any action by his supervisor which would qualify as an adverse employment action under USERRA. There is no evidence, for example, that Mr. Anderson's job duties or other benefits of employment were affected by this supervisor's alleged retaliation. And Mr. Anderson has not presented evidence of a connection between his supervisor's alleged retaliation and his termination in December 2017. Accordingly, Mr. Anderson's unsupported allegations regarding his supervisor's retaliation fail to raise a genuine dispute of fact as to whether his military service was a motivating factor in his termination. Because Mr. Anderson cannot meet this initial burden, his USERRA claim must fail.

---

[8] Many of Mr. Anderson's allegations related to his military service are unsupported by any citation to the record. In some places, Mr. Anderson cites to an unsworn bullet-point list of allegations submitted as an exhibit to his opposition, which is not attached to any affidavit or declaration. (*See, e.g.*, Opp'n, Response to SUMF ¶¶ 4, 8, Doc. No. 38 (citing Ex. 2 to Opp'n, Doc. No. 38-2).) The other exhibits he cites are also not attached to any affidavit or declaration. (*See id.* ¶¶ 8–9 (citing Exs. 3, 4, & 23 to Opp'n, Doc. Nos. 38–3, 38–4, 38–23).) He fails to point to any sworn statement or testimony supporting his allegations.

In his opposition, Mr. Anderson also argues Zions violated USERRA by failing to give him up to two years to return to work following an illness or injury incurred in the performance of military service.  (Opp'n 41–42, Doc. No. 38.)  This argument appears to be an attempt to assert a new claim under a different section of USERRA, which addresses reemployment of military servicemembers "hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of [military] service." 38 U.S.C. § 4312(e)(2)(A).  However, Mr. Anderson did not assert a claim for reemployment under this section in his complaint, nor has he moved for leave to amend his complaint to add this new claim.  Mr. Anderson's attempt to raise a new, unpleaded cause of action in his opposition brief is procedurally improper.  This new claim also fails on the merits.  Among other deficiencies, Mr. Anderson has not presented evidence he was convalescing from an illness or injury incurred in or aggravated during military service.  He asserts most of the anxiety and depression for which he sought a leave of absence were caused by "his situation at Zions," (*see* Opp'n, Response to SUMF ¶ 13, Doc. No. 38), and he presents no evidence these conditions arose or were aggravated during his military service.

For these reasons, Zions is entitled to summary judgment on Mr. Anderson's USERRA claim.

## CONCLUSION

The court GRANTS Zions' motion for summary judgment, (Doc. No. 34), and enters summary judgment in favor of Zions on all claims.

DATED this 28th day of February, 2022.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

20